No. 2024-2167

# United States Court of Appeals for the Federal Circuit

LIFE SPINE, INC.,
*Appellant,*

v.

GLOBUS MEDICAL, INC.,
*Appellee.*

*On Appeal from the United States Patent and Trademark Office, Patent Trial and Appeal Board in No. IPR2022-01434*

## PRINCIPAL BRIEF FOR APPELLANT

Michael R. Houston
FOLEY & LARDNER LLP
321 N. Clark St., Suite 3000
Chicago, IL 60654
(312) 832-4500
mhouston@foley.com

George C. Beck
FOLEY & LARDNER LLP
3000 K Street, N.W. Suite 600
Washington, D.C. 20007
(202) 672-5300
gbeck@foley.com

Sarah E. Rieger
FOLEY & LARDNER LLP
777 E. Wisconsin Ave.
Milwaukee, WI 53202
(414) 271-2400
srieger@foley.com

James M. Glass
QUINN EMANUEL URQUHART & SULLIVAN, LLP
51 Madison Ave., 22nd Floor
New York, NY 10010
(212) 849-7142
jimglass@quinnemanuel.com

David A. Nelson
Brianne M. Straka
QUINN EMANUEL URQUHART & SULLIVAN, LLP
191 N. Wacker Dr., Suite 2700
Chicago, IL 60606
(312) 705-7400
davenelson@quinnemanuel.com
briannestraka@quinnemanuel.com

Quincy Lu
QUINN EMANUEL URQUHART & SULLIVAN, LLP
1109 First Ave., Suite 210
Seattle, WA 98101

206-905-7000
quincylu@quinnemanuel.com

*Counsel for Appellant*

## PATENT CLAIM AT ISSUE

Claim 10 of U.S. Patent No. 8,845,731 (“the ’731 patent”) recites:

> 10. An intervertebral implant comprising:
>
> a first endplate comprising an upper side, a lower side, a ramped surface, the ramped surface extending from the lower side, wherein the first endplate includes a first side portion, the first side portion including a first ramped portion;
>
> a second endplate comprising an upper side, a lower side, a ramped surface, the ramped surface extending from the lower side, wherein the second endplate includes a second side portion, the second side portion including a second ramped portion, wherein the first ramped portion of the first endplate and the second ramped portion of the second endplate are complementary with one another; and
>
> a central ramp comprising an expansion portion and an extension portion extending from the expansion portion, the expansion portion having a first ramped surface for engagement with the ramped surface of the first endplate and a second ramped surface for engagement with the ramped surface of the second endplate, the extension portion configured with an opening,
>
> a driving ramp comprising an expansion portion and an opening extending though the driving ramp in a longitudinal axis, the expansion portion of the driving ramp configured to engage to the first and second endplates,
>
> an actuator member extending through the opening of the driving ramp and configured to engage with the opening in the extension portion of the central ramp,
>
> wherein when the actuator member is actuated in one direction, the driving ramp is fixed with respect to the actuation member and the central ramp is configured to move in a first direction and cause the first and second endplates to move outwardly and away from one another, and when the actuator member is actuated in a second direction, the central ramp is configured to move in a second direction and causes the first and second endplates to move inwards and towards one another.

Appx169.

## CERTIFICATE OF INTEREST

Appellant's undersigned counsel certified that the following information is accurate and complete to the best of counsel's knowledge:

**1. Represented Entities.** Fed. Cir. R. 47.4(a)(1): "The full name of every entity represented in the case by the counsel filing the certificate."

Life Spine, Inc.

**2. Real Party in Interest.** Fed. Cir. R. 47.4(a)(2): "For each entity, the name of every real party in interest, if that entity is not the real party in interest."

N/A

**3. Parent Corporations and Stockholders.** Fed. Cir. R. 47.4(a)(3): "For each entity, that entity's parent corporation(s) and every publicly held corporation that owns ten percent (10%) or more of its stock."

N/A

**4. Legal Representatives.** Fed. Cir. R. 47.4(a)(4): "The names of all law firms, partners, and associates that have not entered an appearance in the appeal, and (A) appeared for the entity in the lower tribunal; or (B) are expected to appear for the entity in this court."

Jeffrey N. Costakos, Foley & Lardner LLP

Scott D. Anderson, Foley & Lardner LLP

**5. Related Cases.** Fed. Cir. R. 47.4(a)(5): "An indication as to whether there are any related or prior cases, other than the originating case number(s), that meet the criteria under Federal Circuit Rule 47.5."

*Globus Medical Inc. v. Life Spine, Inc.*, 21-cv-1445 (D. Del.)

**6. Organizational Victims and Bankruptcy Cases.** Fed. Cir. R. 47.4(a)(6): "All information required by Federal Rule of Appellate Procedure 26.1(b) and (c) that identifies organizational victims in criminal cases and debtors and trustees in bankruptcy cases."

N/A

*/s/ James M. Glass*
JAMES M. GLASS
Counsel for Appellant
December 12, 2024

# TABLE OF CONTENTS

**Page**

CERTIFICATE OF INTEREST ..................................................................... i

TABLE OF AUTHORITIES .........................................................................v

STATEMENT OF RELATED CASES ............................................................ vii

PRELIMINARY STATEMENT.....................................................................1

JURISDICTIONAL STATEMENT.................................................................2

STATEMENT OF ISSUES PRESENTED......................................................2

STATEMENT OF THE CASE .....................................................................2

A. Technology Background ...............................................................2

B. The ’731 Patent..............................................................................4

1. The Specification ..................................................................4

2. The Primary Issue on Appeal: Claim 10’s “Ramped Portions” That Are “Complementary With One Another”.........6

C. The Prosecution History..................................................................7

D. The Prior Art................................................................................12

1. Olmos (Appx1403-48)..........................................................12

2. Chung (Appx1381-1402) ......................................................13

3. Baynham (Appx1449-58) .....................................................14

E. Proceedings Before The Patent Trial And Appeal Board ..................15

SUMMARY OF ARGUMENT....................................................................26

STANDARD OF REVIEW .........................................................................26

ARGUMENT.............................................................................................27

I. THE BOARD INCORRECTLY CONSTRUED THE CLAIM TERM "COMPLEMENTARY WITH ONE ANOTHER" .....................................27

A. The Board's Construction Does Not Reflect the Ordinary Meaning to a POSITA ....................................................................27

B. The Board's Construction Excludes The Very Embodiment That The Applicant Cited To Obtain Allowance ................................30

C. The Board's Construction Misconstrues the Prosecution History......37

II. REMAND IS UNNECESSARY ..................................................................42

CONCLUSION ..........................................................................................42

CERTIFICATE OF COMPLIANCE...........................................................44

# TABLE OF AUTHORITIES

## Cases

*Anderson v. International Engineering & Manufacturing, Inc.*,
160 F.3d 1345 (Fed. Cir. 1998)....................29

*Convolve, Inc. v. Compaq Computer Corp.*,
812 F.3d 1313 (Fed. Cir. 2016)....................36, 37

*Cordis Corp. v. Medtronic Ave, Inc.*,
339 F.3d 1352 (Fed. Cir. 2003)....................37, 38

*In re CSB-Sys. Int'l, Inc.*,
832 F.3d 1335 (Fed. Cir. 2016)....................36

*Globus Medical, Inc. v. Life Spine, Inc.*,
21-1445 (JPM) (D. Del.)....................vi

*Irdeto Access, Inc. v. Echostar Satellite Corp.*,
383 F.3d 1295 (Fed. Cir. 2004)....................25

*Phillips v. AWH Corp.*,
415 F.3d 1303 (Fed. Cir. 2005)....................29, 38

*Polaris Innovations Ltd. v. Brent*,
48 F.4th 1365 (Fed. Cir. 2022)....................25

*Renishaw PLC v. Marposs Societa' Per Azioni.*,
158 F.3d 1243 (Fed. Cir. 1998)....................29

*St. Clair Intell. Prop. Consultants, Inc. v. Canon Inc.*,
412 F. App'x 270 (Fed. Cir. 2011)....................35

*SynQor, Inc. v. Artesyn Techs., Inc.*,
709 F.3d 1365 (Fed. Cir. 2013)....................30

*TorPharm, Inc. v. Ranbaxy Pharms, Inc.*,
336 F.3d 1322 (Fed. Cir. 2003)....................37

## Other Authorities

Notice of Allowance. Appx1109-12 (Ex. 1004) ....................................................11

U.S. Patent No. 8,845,731
...vi, 1, 3, 4, 5, 6, 7, 8, 9, 10, 11, 12, 14, 15, 16, 19, 21, 24, 28, 29, 31, 32, 38, 39

U.S. Patent Application Publication No. 2007/0270968 (November 22, 2007)..........................................................................................13, 14

## STATEMENT OF RELATED CASES

There have been no prior appeals. This appeal by Appellant Life Spine, Inc. ("Life Spine") arises from the Patent Trial and Appeal Board's ruling on *inter partes* review (commenced by a petition filed by Life Spine) that certain claims of Appellee Globus Medical, Inc.'s ("Globus") U.S. Patent No. 8,845,731 ("the '731 patent") are not invalid as anticipated and/or obvious.

Globus asserted the '731 patent against Life Spine in a case pending before the United States District Court for the District of Delaware, *Globus Medical, Inc. v. Life Spine, Inc.*, 21-1445 (JPM) (D. Del.), filed on October 13, 2021.

## PRELIMINARY STATEMENT

In ruling that claims 10 through 14 of U.S. Pat. No. 8,845,731 (the "'731 patent") are not unpatentable, the Board improperly adopted a narrow construction for the claims' requirement that "ramped portion[s]" are "***complementary*** with one another," requiring that they "***complete*** one another" and expressly excluding ramps with ***mirrored*** angles. Appx43.[1] This construction is wrong because it is entirely divorced from the specification, excludes the ***very embodiment*** that provided written description support for this term when added by amendment, and was based on a general-purpose dictionary definition of "complementary" that is at odds with the ordinary meaning. Indeed, this definition excludes an embodiment where the ramped portions have "mirror" angles rather than "complete" one another. It also ignores the applicant's complete silence during prosecution in response to the examiner repeatedly mapping the limitation to ramps with mirrored angles found in the prior art. As a result, the Board committed legal error by improperly prioritizing its own extrinsic evidence over the intrinsic evidence.

For these reasons and as further explained below, this Court should reverse the Board's decision.

---

[1] All emphases added unless noted otherwise.

## JURISDICTIONAL STATEMENT

This appeal arises from the IPR proceeding IPR2022-01434 under 35 U.S.C. §§311-319. The Board entered final written decision on March 20, 2024. Appx1-127. Life Spine filed a timely notice of appeal. 35 U.S.C. §§142, 319; 37 C.F.R. §90.3(a)(1). This Court has jurisdiction under 35 U.S.C. §319, 35 U.S.C. §141(c), and 28 U.S.C. §1295(a)(4)(A).

## STATEMENT OF ISSUES PRESENTED

1. Whether in light of the entire claim, the specification, and the prosecution history of the ’731 patent, the plain meaning of the claim term “ramped portion[s]” that are “complementary with one another” includes ramped portions with mirrored angles?

## STATEMENT OF THE CASE

### A. Technology Background

“The human spine is a flexible weight bearing column formed from a plurality of bones called vertebrae.” Appx1432 (Olmos)(¶5). Various diseases related to the spine (*e.g.*, spondylosis, spondylolisthesis, degenerated or herniated intervertebral discs) can cause displacement of vertebra from all or part of the vertebral column. Appx1432 (Olmos)(¶7). This displacement of vertebra results in pain and disability. Appx1432 (Olmos)(¶7). “Spinal fusion is one common technique used to restore displaced vertebra to their normal position. Appx1432 (Olmos)(¶8). In spinal fusion one or more vertebra are united or “fused” together so that no motion occurs between

them, and they remain fixed within the vertebral column. Appx1432 (Olmos)(¶8). This is accomplished "by providing an intervertebral implant between adjacent vertebrae to recreate the natural intervertebral spacing between adjacent vertebrae." Appx1432 (Olmos)(¶9). Once the implant is in place, osteogenic material such as bone graft is applied in and around the implant to prompt bone ingrowth to secure long-term fixation. Appx1432 (Olmos)(¶9). Rods and screws may also be used to provide additional stabilization during the fusion process. Appx1432 (Olmos)(¶9).

Spinal fusion is not new. Appx849-50 (Drewry Decl.)(¶¶43-46). In fact, one of the earliest documented cases of spinal fusion in modern medicine dates back to 1891 in Austin, Texas. *Id.* The use of intervertebral implants also is not new. Appx850 (Drewery Decl.)(¶45). While older models typically came in fixed sizes, more recent intervertebral implant designs "allow the surgeon to adjust the height of the intervertebral implant." Appx1432 (Olmos)(¶10). This allows the surgeon to, *in situ*, adjust "implant height to match the natural spacing between the vertebrae" and "reduces the number of sizes that the hospital must keep on hand to match the variable anatomy of the patients." *Id.* Like their static counterparts, these adjustable or expandable implants employ basic engineering principles that have long been commonplace in the field, including screw and scissor jacks, wedges or ramps, and dovetail connections, to name a few. *See* Appx850-57 (Drewry Decl.)(¶¶47-62). For example, one common configuration of an adjustable intervertebral implant

involves pushing apart two opposing plates with one or more ramps (or wedges) that are pulled together using a screw:






Appx1424 (Olmos)(Fig. 18), Appx1450 (Baynham)(Fig. 1).

## B. The ’731 Patent

The ’731 patent is directed to “an expandable fusion device capable of being installed inside an intervertebral disc space to maintain normal disc spacing and restore spinal stability, thereby facilitating an intervertebral fusion.” Appx128 (’731 patent)(Abstract). The fusion device of the ’731 patent generally includes “a central ramp, a first end plate, and a second endplate, the central ramp capable of being moved in a first direction to move the first and second endplates outwardly and into an expanded configuration.” *Id.*

### 1. *The Specification*

The ’731 patent acknowledges that there “are a number of known conventional fusion devices and methodologies” for accomplishing intervertebral fusion, including “screw and rod arrangements, solid bone implants, and fusion

devices which include a cage or other implant mechanism" which are "implanted between adjacent vertebral bodies" to fuse them together. Appx159 ('731 patent)(1:24-32). According to the '731 patent, however, these conventional solutions "often require that the adjacent vertebral bodies be distracted to restore a diseased disc space to its normal or healthy height prior to implantation of the fusion device" so the fusion device "is usually dimensioned larger in height than the initial distraction height," and this "difference in height can make it difficult for a surgeon to install the fusion device in the distracted intervertebral space." Appx159 ('731 patent)(1:36-43).

The '731 patent thus claims to improve upon known fusion devices so that the device is "capable of being installed inside an intervertebral disc space at a minimum to no distraction height and for a fusion device that can maintain a normal distance between adjacent vertebral bodies when implanted." Appx159 ('731 patent)(1:44-48). Figures 40 through 42 are directed to an exemplary embodiment showing the device going from an unexpanded to an expanded state. Appx149-50 ('731 patent)(Figs. 40-42); Appx164 ('731 patent)(12:47-48).



FIG. 40



FIG. 41



FIG. 42

The claims of the ’731 patent generally recite a first and second end plate as well as a central ramp that moves the end plates outwardly and into an expanded configuration. Appx168-70 (’731 patent)(cls. 1, 10, 15). As discussed herein, the Board found unpatentable all claims except 10 through 14. The Board has also found similar claims in related patents unpatentable.

#### 2. *The Primary Issue on Appeal: Claim 10’s “Ramped Portions” That Are “Complementary With One Another”*

The central issue with respect to claim 10 are the claimed first and second “ramped portion[s]” found on the first and second endplates, respectively. Claim 10 recites that these “ramped portion[s]” are “complementary with one another.” Appx169. Although the specification does not expressly explain what “complementary with one another” means, the specification provides several examples of first and second ramped portions, including in the Figure 40 embodiment where these ramped portions have mirrored angles.[2] Appx165 (’731 patent)(13:28-38). Another example includes the embodiment depicted in Figures 50-54. Appx167 (’731 patent)(17:14-17). Importantly, when amending the claims during prosecution to add the “complementary” limitation, the applicant argued that

[2] Surfaces with “mirrored angles” are “mirrored by having the same angles across the horizontal plane between them.” Appx943 (Drewry Decl.)(¶184).

the "amendments cover, for example, the embodiment illustrated in FIG. 40 … and described in its associated disclosure." Appx1347 (Ex. 1004)(251).

The Figure 40 embodiment, which also includes Figures 41 through 43, is described as having opposing endplates each with side portions, the first side portion having a "first ramped portion[] 306" and the second side portion as having "second ramped portion[] 310." Appx165 ('731 patent)(13:28-30). While not labeled in Figure 40, these ramped portions are labeled in Figures 42 and 43, as shown in the annotated figures below. As can be seen, the ramped portions have surfaces with mirrored angles.




FIG. 42




## C. The Prosecution History

The prosecution history of the '731 patent with respect to the "complementary with one another" limitation is lengthy but important. When that limitation was added to the claims, the applicant noted that it covered the Figure 40 embodiment. Following a rejection in view of Olmos, the "complementary" language was

removed, but then later re-added to current claim 10. However, the examiner continued to find the limitation disclosed by Olmos, and the applicant never argued otherwise. Eventually, the applicant was able to traverse Olmos by adding a number of other limitations unrelated to the "complementary" language.

The original set of claims filed with the application did not recite any ramped portions or that they were complementary with one another. The examiner's first rejection found that all claims were anticipated by U.S. Pat. App. Pub. No. 2008/0140207 to Olmos ("Olmos"). Appx1352-68 (Ex. 1004)(256-272); Appx1403 (Olmos). In response, the applicant amended the independent claims to recite ramped portions that are "complementary with one another" as currently recited in claim 10. Appx1342-45 (Ex. 1004)(246-49). With respect to the independent claims, the applicant remarked that the independent claims were amended to include ramped portions and that they were complementary because that limitation was not disclosed in Olmos. Appx1347 (Ex. 1004)(251).

The applicant stated that the "amendments cover, for example, the embodiment illustrated in FIG. 40 … and described in its associated disclosure." *Id.* As discussed above, the Figure 40 embodiment and its description identify ramped portions that have mirrored angles. Appx165 ('731 patent)(13:28-30).




The examiner issued a final rejection, finding that the amended claims, including the "complementary" ramped portions, were anticipated by Olmos, as well as anticipated by U.S. Pat. No. 6,176,882 ("Biedermann") and rendered obvious by Olmos in view of U.S. Pat. App. Pub. No. 2003/0130739. Appx1300-37 (Ex. 1004)(204-41). In particular, one of the ways the examiner mapped the Olmos to the first and second "complementary" ramped portions is shown below:



Appx1335 (Ex. 1004)(239). The examiner noted that, as shown in the below figures annotated by the examiner, these mirrored first and second ramped portions could be oriented "such that they are complementary with each other." *Id.*




The examiner also "noted that applicant is not claiming how the[ ramped portions] compl[e]ment each other." *Id.*

In response, the applicant ***removed*** the language that the ramped portions are "complementary with one another" and added language that the side portions comprise "dual, overlapping ramped portions" and that there are "at least five ramped surfaces" for the side portions of each endplate. Appx1294-95 (Ex. 1004)(198-99). The applicant argued that these amendments distinguished Olmos and Biedermann. *Id.*

The examiner disagreed. Following another rejection based on Olmos, the applicant amended the independent claims to recite that the endplates do not contact

each other when the device is expanded. Appx1240-43 (Ex. 1004)(144-47). Notably, the applicant also amended then-pending claim 17 (now claim 10) to again recite that the ramped portions are "complementary with one another." Appx1242-43 (Ex. 1004)(146-47). This amendment, however, was not marked as an amendment (*i.e.* it was not underlined), nor was it made to claim 1. *Id.*; *see also* Appx1196-97 (Ex. 1004)(100-01) ("Claim 17 lines 7-9 were added to the claim and should have been underlined"). In its remarks, the applicant made no mention of the "complementary" language and instead argued that the prior art does not disclose that the endplates are not in contact with one another when expanded. Appx1240-43 (Ex. 1004)(144-47).

Nevertheless, the examiner again rejected the claims as anticipated by Olmos and Biedermann, including that both references disclosed complementary ramped portions. Appx1199-1230 (Ex. 1004)(103-134).

In response, the applicant did not substantively amend the claims nor dispute that Olmos and Biedermann disclose complementary ramped portions. Instead, the applicant argued that Olmos and Biedermann lacked other, unrelated limitations. Appx1182-92 (Ex. 1004)(86-96). The examiner disagreed with these arguments and again rejected the claims as anticipated by Olmos or Biedermann. Appx1136-75 (Ex. 1004)(40-79).

Following this rejection, the applicant and the examiner had an interview to discuss proposed amendments to the claims, including an amendment that added a "driving ramp" coupled to an "actuation member [which] extends through an unthreaded opening in the driving ramp" to expand the device when rotated. Appx1126-29 (Ex. 1004)(30-33). The examiner agreed that applicant's amendments to claim 1 would overcome the prior art, including if they were adopted to claim 17. *Id.*

The applicant then made those amendments. Appx1115-20 (Ex. 1004)(19-24). Again, the applicant did not dispute that the prior art discloses complementary ramped portions. *Id.* The examiner then issued a Notice of Allowance. Appx1109-12 (Ex. 1004)(13-16).

### D. The Prior Art

The prior art invoked in Life Spine's Petition to the Board (challenging the validity of the '731 patent) was developed against the background of the general technology discussed in Section A, *supra*.

#### 1. Olmos (Appx1403-48)

Olmos (U.S. Patent Publication No. 2008/014020 (June 12, 2008)) discloses an "adjustable spinal fusion intervertebral implant." Appx1403 (Olmos)(Abstract). Like the fusion device of the '731 patent, Olmos's implant comprises "upper and lower body portions," "proximal and distal wedge surfaces," and an "actuator shaft,"

which can be actuated to "cause the separation of the upper and lower body portions, thereby expanding the intervertebral implant." *Id.*


FIG. 16A FIG. 16B

Figures 16A and 16B above, show a perspective view of Olmos's device in an unexpanded and expanded state, respectively. Appx1421-22 (Olmos)(Figs. 16A-16B); Appx1434 (Olmos)(¶¶51-52).

**2. Chung (Appx1381-1402)**

Chung (Korean Reg. Utility Model No. KR20-0290058 (September 26, 2002)) discloses "a medical device" for insertion "between the back bones consisting of the lumbar in order to fix the back bones robustly while freely adjusting the height in order to maintain the appropriate space according to the patient's state." Appx1384 (Chung)(2). Chung's device comprises two "holder bodies," a "lead wedge," and an "opposing wedge." Appx1385 (Chung)(3). A fastening screw is used to adjust the distance between the two "holder bodies" or endplates. *Id.* Figure 4 below shows a cross-sectional view of Chung's device. Appx1390 (Chung)(10).




### 3. Baynham (Appx1449-58)

Baynham (U.S. Patent Application Publication No. 2007/0270968 (November 22, 2007)) discloses a "spinal fusion implant for implantation between adjacent vertebrae" comprising "an upper section and a lower section" separated by a wedge shaped "distractor." Appx1449 (Baynham)(Abstract). The upper section and the lower section move away from one another "as the wedge shaped distractor increases the height of the device." *Id.* Baynham's device is shown below in Figure 1. Appx1450 (Baynham)(Fig. 1).



FIG. 1

### E. Proceedings Before The Patent Trial And Appeal Board

In its Petition (Appx176-316) for *inter partes* review, Life Spine challenged all claims (1-15) of the ’731 patent as unpatentable based on four grounds:

- Ground 1 (claims 1-15) relied on Chung;
- Ground 2 (claims 1-15) relied on Chung and Baynham;
- Ground 3 (claims 1-15) relied on Olmos or Olmos and Chung; and
- Ground 4 (claims 2-6, 10-14) relied on Chung and Olmos or Olmos and Baynham.

Appx183 (Petition)(3).

With respect to the “complementary” ramped portions found in claim 10, Life Spine explained in its Petition that the plain and ordinary meaning of the term encompasses ramped portions having angles that mirror each other, and that they are

disclosed in the Chung and Olmos prior art references. Appx225 (Petition)(45). Life Spine further explained that although the specification does not explicitly define what makes two ramped portions "complementary," during prosecution, the examiner repeatedly mapped this limitation to ramps with mirrored angles, which the applicant never disputed. *Id.* (citing Appx1131-34 (Ex. 1004)(35-38), Appx1136-39 (Ex. 1004)(40-43), Appx1151 (Ex. 1004)(55), Appx1153 (Ex. 1004)(57), Appx1164 (Ex. 1004)(68), Appx1166 (Ex. 1004)(70), Appx1175-78 (Ex. 1004)(79-82), Appx1194-96 (Ex. 1004)(98-100), Appx1205-07 (Ex. 1004)(109-11), Appx1209-10 (Ex. 1004)(113-14), Appx1216 (Ex. 1004)(120-22), Appx1238-39 (Ex. 1004)(142-43), Appx1333-36 (Ex. 1004)(237-40)).

The Petition cited testimony from Life Spine's expert, Dr. Troy Drewry, who explained that "complementary parts may provide a mirrored version of each other" to "interact in a generally identical, symmetrical way." Appx942 (Drewry Decl.)(¶182). He then went on to explain how this feature was found in the prior art where endplate ramped portions "have the same angle, effectively mirroring each other," to "engage opposing surfaces" of a central ramp "in a complementary manner, i.e., by engaging the top and bottom sloped surfaces of the ramp in an identical way and causing symmetrical expansion of the device." Appx942-43 (Drewry Decl.)(¶¶183-184), Appx1062-63 (Drewry Decl.)(¶¶380-382).

**Olmos, Fig. 18**




In its Institution Decision, although the Board held that the Petition's challenge against claims 1-9 and 15 had merit, the Board also preliminarily held that the prior art lacked the "complementary" ramped portions recited in claims 10-14. The Board determined—based on a definition from a dictionary that the Board *sua sponte* entered into evidence—that the "plain and ordinary meaning of 'complementary with one another' is 'completing one another.'" Appx459 (Institution Decision)(20). The Board did not explain what it meant by "completing one another," only that its preliminary construction excluded ramped portions having angles that mirror each other. Appx480 (Institution Decision)(41) ("[W]e preliminary find that Chung's first and second ramp portions, which are mirrored by having the same angles across the horizontal plane between them, do not complete each other."), Appx493-94 (Institution Decision)(54) ("[W]e preliminary find that Olmos's ramps, which are mirrored by having the same angles across the horizontal plane between them, do not complete each other.").

In its Final Written Decision, the Board found that Life Spine "has demonstrated by a preponderance of the evidence that claims 1–9 and 15 are unpatentable" based on grounds 1 and 3. Appx124-25 (FWD)(124-25).[3] For claims 10-14, however, the Board adopted the same construction from its Institution Decision and found that Life Spine did not demonstrate unpatentability of those claims under any ground because the prior art does not "teach or suggest the 'complementary with one another' limitation recited in [independent] claim 10." Appx119 (FWD)(119), Appx124-25 (FWD)(124-25).

Although the Board did not expressly articulate what it meant by ramped portions "completing one another," the Board did state that the below annotated version of Figure 40 from Globus was consistent with its understanding, noting that the identified portions "fit over one another along at least a portion of their lengths." Appx40 (FWD)(40).

---

[3] The Board stated that because it had found claims 1–9 and 15 "unpatentable as anticipated by Chung and as obvious over Olmos" (grounds 1 and 3), it did not need to consider Appellant's other grounds (2 and 4) as to those claims. Appx118. Appellee has not appealed the Board's decision finding those claims unpatentable. In addition, the Board has found unpatentable all challenged claims of several related patents: U.S. Pat. Nos. 10,137,001 (IPR2022-01435), 8,845,732 (IPR2022-01599), 10,973,649 (IPR2022-01600), and 9,956,087 (IPR2022-01602). Appellee did not appeal any of those decisions.

**Patent Owner Annotated**
**('731 Patent, Figure 40)**




FIG. 40

The Board also stated that other extrinsic evidence showed "complementary … structures that engage each other," and credited Globus's expert's explanation that "complementary" involves "improving the physical engagement between two things by having them complete one another." Appx41 (FWD)(41) (citing Appx2058-59 (Culbert Decl.)(¶168)). And with respect to ramped surfaces with mirrored angles, the Board expressly held that they "cannot complete one another absent reorienting them in a manner inconsistent with their orientation in the assembled implant." Appx41 (FWD)(41) (quoting Appx2056-57 (Culbert Decl.)(¶166)).

The difference between Board's construction and the Petition's construction is best illustrated by certain ramped surfaces of the Figure 40 embodiment from the specification. Again, the Board was convinced by Globus's argument that the below

annotated surfaces from Figure 40 are “complementary” because they “complete one another”:

**Patent Owner Annotated
(’731 Patent, Figure 40)**




Appx39-40 (FWD)(39-40) (citing Appx598 (POR)(82)). Mirrored ramped portions, on the other hand, have ramped surfaces with mirrored angles, *i.e.* “mirrored by having the same angles across the horizontal plane between them.” Appx943 (Drewry Decl.)(¶184). Such mirrored angles can be found in the “first ramped portion[] 306” and “second ramped portion[] 310” from Figure 43 as annotated below. Appx165 (’731 patent)(13:28-38).




These ramped portions correspond to the below annotated surfaces from Figure 40:



FIG. 40

Following its construction from a general-purpose dictionary, the Board concluded that its definition was not inconsistent with the intrinsic evidence or other extrinsic evidence based on 1) the specification's lone usage of the word "complementary" to describe other features that engage two surfaces securely (*i.e.*, surface texturing such as teeth, ridges, or other friction increasing elements)—***not***

the claimed ramped portions; 2) its conclusion that the applicant added the "complementary" limitation to claim 10 to specifically exclude ramped portions having mirrored angles; and 3) the usage of the term "complementary" in some prior art references to refer to improving the physical engagement between two components or surfaces. Appx29-43 (FWD)(29-43).

*First*, as to the specification, the Board noted that the term "complementary" appears "only once, in describing texturing or engagement features"—*i.e.* surfaces that prevent movement (such as interlocking teeth)—on endplate surfaces in a single embodiment depicted in Figure 17. Appx30 (FWD)(30); Appx162 ('731 patent)(8:36-40) ("The lower surfaces 104 have ***complementary*** texturing or engagement features on their surfaces to engage with the texturing or engagement features on the upper endplate 14 and the lower endplate 16 of the fusion device 10."). The Board determined that this description is "consistent with a plain meaning of 'complementary' as indicating 'completing.'" Appx39 (FWD)(39). The Board did not address that Figure 17's "artificial endplates" are ***not*** the recited ramped portions, and the "complementary texturing" refers to interlocking surfaces that prevent movement, whereas the claimed ramped portions must be ***movable*** relative to each other. Figure 17 is reproduced below:




*Second*, regarding the prosecution history, the Board concluded that by amending then pending claim 17 (which later issued as claim 10) to recite the "complementary" limitation, the applicant intended to specifically exclude ramped portions having mirrored angles. Appx31-37 (FWD)(31-37), Appx41-43 (FWD)(41-43). The Board, however, failed to note that prior to the amendment, the claims did not recite any "ramped portion[s]." Thus, although the Board concluded that the applicant's intent in making the amendment was to distinguish "Olmos's ramped surfaces having mirrored angles," it had to acknowledge that the examiner did not "expressly note[]" that the prior art had mirrored ramped portions. Appx32 (FWD)(32 n.11); Appx 43 (FWD)(43). Nonetheless, the Board determined that by adding the "complementary" language to the claim the applicant "put skilled artisans 'on notice'" that the applicant did not consider ramped portions with mirrored angles to be "complementary" because Olmos "discloses only ramped surfaces having mirrored angles of inclination." Appx43 (FWD)(43).

The Board, however, gave no weight to the fact that even ***after*** that amendment, the examiner continued to cite to Olmos's ramped portions as meeting the amended limitation ***without dispute*** from the applicant. Appx1131-34, Appx1136-39, Appx1151, Appx1153, Appx1164, Appx1166, Appx1175-78, Appx1194-96, Appx1205-07, Appx1209-10, Appx1216, Appx1238-39, Appx1333-36. Nor did the Board give weight to applicant's immediate response to the examiner's citation to Olmos's ramped portions: "delet[ing] the 'complementary with one another' limitation from the claims" entirely and without argument. Appx36 (FWD)(36). The applicant "later re-added this limitation back to independent claim 17 (which issued as claim 10)" alongside other amendment[4] but "did not specifically address the 'complementary with one another' limitation" thereafter, instead focusing on other amendments and arguments. Appx36 (FWD)(36). The Board, however, did not find the applicant's silence noteworthy because the other amendments and arguments were accompanied by boilerplate language under a heading titled "No disclaimers or disavowals." Appx36 (FWD)(36), Appx43 (FWD)(43).

---

[4] The Board also noted that "although the applicant re-added the 'complementary with one another' limitation to independent claim 17 in an amendment dated July 29, 2013, this addition is not immediately apparent from the amendment, because the applicant did not mark the language as an addition." Appx36 (FWD)(36 n.12).

The Board also concluded that the "Examiner's view that ramps that mirror each other are 'complementary with one another,' or that can be reoriented to be 'complementary with one another, at best comports with the 'broadest reasonable interpretation' standard the Examiner was required to apply, but does not comport with the *Phillips* claim construction standard applicable here." Appx42 (FWD)(42). According to the Board, "the Examiner's rejections based on taking devices with ramped surfaces that have mirrored angles, disassembling them, and then reorienting the ramps to fit over one another" was "'inconsistent with their orientation in the assembled implant.'" Appx41 (FWD)(41).

*Third*, as further support of its construction, the Board cited Globus's identification of certain prior art references using the term "complementary." Appx40-41 (FWD)(40-41). The Board credited Globus's expert's conclusion that "'[e]ach use of 'complementary' in these exhibits refers to improving the physical engagement between two things by having them complete one another.'" Appx41 (FWD)(41). The Board concluded that "these references are [] consistent with a plain meaning of 'complementary' as indicating 'completing,' but do not support a plain meaning that encompasses ramped portions having angles that mirror each other." *Id.*

## SUMMARY OF ARGUMENT

The Board committed legal error by elevating its dictionary definition of the term "complementary" to trump the intrinsic evidence. The Board's construction that "complementary" ramped portions must be ramped portions "completing one another" excludes preferred embodiments within the specification, including the ***same embodiment*** that the applicant identified during prosecution as embodying the "complementary" limitation. This embodiment has ramped portions with mirrored angles, which the Board excluded from its construction.

With respect to the prosecution history, the Board failed to give proper weight to the examiner's repeated rejections of the "complementary" ramped portions in view of Olmos's mirrored-angle ramps, as well as the applicant's consistent silence to those rejections. Instead, the Board wrongly concluded that the examiner's rejections merely reflect a construction under the "broadest reasonable interpretation" standard despite no evidence in the record below an ordinary artisan would view the scope of the term differently under the *Phillips* standard.

## STANDARD OF REVIEW

"The Board's ultimate claim constructions and any underlying determinations based on intrinsic evidence [are] review[ed] de novo." *Polaris Innovations Ltd. v. Brent*, 48 F.4th 1365, 1372 (Fed. Cir. 2022). Any subsidiary factual findings involving extrinsic evidence are reviewed for substantial evidence. *Id.*

# ARGUMENT

## I. THE BOARD INCORRECTLY CONSTRUED THE CLAIM TERM "COMPLEMENTARY WITH ONE ANOTHER"

"Claim construction analysis begins with the intrinsic evidence." *Irdeto Access, Inc. v. Echostar Satellite Corp.*, 383 F.3d 1295, 1299 (Fed. Cir. 2004). In its Final Written Decision, the Board took the opposite approach, turning to a dictionary that was at odds with the intrinsic evidence, and dismissing intrinsic evidence that contradicted its general-purpose dictionary definition. The Board's construction of "complementary with one another" as "completing one another" is not only vague on its face, it is both inconsistent with preferred embodiments in the specification, including the very embodiment identified by applicant as embodying the "complementary" ramped portions, as well as the prosecution history. The Board's construction should be rejected and its decision reversed.

### A. The Board's Construction Does Not Reflect the Ordinary Meaning to a POSITA

The Board construed the term "complementary" by first turning to extrinsic evidence—a general-purpose dictionary cited by neither party. The Board did so because "the Specification gives an example of the term 'complementary,' but does not provide an express definition for the term." Appx38 (FWD)(38). That resulted in the Board construing the term as "completing one another." *Id.* (citing Appx2164 (American Heritage Dictionary)(3)).

But the Board's definition from a ***general-purpose*** dictionary does not reflect the ordinary meaning of "complementary" ramped portions within the field of ***spinal implant devices***. As Life Spine's expert testified, the ordinary meaning of "complementary" parts in light of the specification includes parts that "interact in a generally identical, symmetrical way." Appx942 (Drewry Decl.)(¶182). This would include ramped portions that had the "same angle relative to the common plane between them." *Id.* There was no justifiable reason for the Board to exclude this understanding of "complementary" from its construction, particularly in view of the fact that it fully comports with the disclosed embodiments of the specification and the prosecution history.

In fact, it clear from the Board's dictionary that the definition for "complementary" has ***nothing to do*** with spinal implant devices. The ***full*** definition[5] in the American Heritage Dictionary for the term is:

1. Forming or serving as a complement; completing.
2. Supplying mutual needs or lacks.
3. Producing effects in concert different from those produced separately. Used of genes.
4. Of or pertaining to the specific pairing of the purines and pyrimidines between two strands of DNA molecules.

---

[5] Indeed, in the very dictionary the Board relied on, it lists multiple additional definitions for "complementary" and "complement." The Board did not explain why it adopted one definition over the other.

Appx2164.

On their face, none of these definitions have anything to do with spinal implant devices, and on that basis alone cannot be used to trump the understanding of a person of ordinary skill. *Anderson v. International Engineering & Manufacturing, Inc.*, 160 F.3d 1345, 1348-49 (Fed. Cir. 1998), ("[D]ictionary definitions of ordinary words are rarely dispositive of their meanings in a technological context. A word describing patented technology takes its definition from the context in which it was used by the inventor."); *Renishaw PLC v. Marposs Societa' Per Azioni*, 158 F.3d 1243, 1250 (Fed. Cir. 1998) ("[A] common meaning, such as one expressed in a relevant dictionary, that flies in the face of the patent disclosure is undeserving of fealty. … Indiscriminate reliance on definitions found in dictionaries can often produce absurd results. … Ultimately, the interpretation to be given a term can only be determined and confirmed with a full understanding of what the inventors actually invented and intended to envelop with the claim.")

The Board's emphasis on a general-purpose dictionary to define a term in a specialized field runs entirely counter to the Court's holding in *Phillips v. AWH Corp.*, 415 F.3d 1303 (Fed. Cir. 2005). *Phillips* squarely addressed courts that were "giv[ing] greater emphasis to dictionary definitions of claim terms and … assign[ing] a less prominent role to the specification and the prosecution history."

*Phillips*, 415 F.3d at 1319. *Phillips* expressly overruled the *Texas Digital* line of cases because "the methodology [those cases] adopted placed too much reliance on extrinsic sources such as dictionaries, treatises, and encyclopedias and too little on intrinsic sources." *Id.* at 1320. Indeed, *Phillips* warned against what the Board did here—that it was improper to merely looking to the intrinsic evidence "to serv[e] as a check on the dictionary meaning of a claim term … or if the specification contains a sufficiently specific alternative definition or disavowal." *Id.*

### B. The Board's Construction Excludes The Very Embodiment That The Applicant Cited To Obtain Allowance

The Board's requirement that "complementary" ramped portions must "complete[] one another" cannot be correct because it excludes embodiments from the specification. In particular, Figure 40 illustrates ramped portions that have ***mirrored angles*** and do not ***complete*** one another. The Final Written Decision attempted to harmonize its construction with Figure 40 by noting that the below ramped surfaces (as annotated by Globus) "complete one another."

**Patent Owner Annotated
('731 Patent, Figure 40)**




Appx39-40 (FWD)(39-40) (citing Appx598 (POR)(82)). But this misses the mark, as the annotated portions in the above figure are ***not identified as ramped portions*** in the specification. These portions therefore have nothing to do with the "complementary" limitation.

Instead, the specification identifies ***different*** portions of the Figure 40 embodiment as "ramped portions," and these portions undisputedly have mirrored angles. Specifically, the specification describes the Figure 40 embodiment as having first and second end plate, which in turn have a "first ramped portion[] 306" and a "second ramped portion[] 310," respectively. Appx165 ('731 patent)(13:28-38). As

shown in the below annotations, these ramped portions are depicted in Figure 43[6] and plainly show that they have ***mirrored angles***.[7]




These ramped portions 306 and 310 correspond to the below annotations in Figure 40:

[6] Figures 40 through 44 all depict the same embodiment of an "expandable fusion device 10," but at different angles and different expansion states. Appx164 ('731 Patent)(12:47-48).

[7] As discussed above and as depicted in Figure 40, ramped portions with "mirrored angles" simply means that the ramps "are mirrored by having the same angles across the horizontal plane between them, and that they engage the top and bottom sloped surfaces of the ramp in a generally identical way." Appx943-44 (Drewry Decl.)(¶184). The Board's requirement of "completing one another" means that the portions "fit over one another along at least a portion of their lengths." Appx40 (FWD)(40).



FIG. 40

Thus, while the Board acknowledged that claim 10 embodies Figure 40, the Board's construction excluded the very elements described as "ramped portions." These ramped portions are expressly depicted as having mirrored angles and are entirely inconsistent with the Board's dictionary definition, and were thus ignored. For this reason alone the Board's construction was improper. *SynQor, Inc. v. Artesyn Techs., Inc.*, 709 F.3d 1365, 1378-79 (Fed. Cir. 2013) ("A claim construction that excludes the preferred embodiment is rarely, if ever, correct and would require highly persuasive evidentiary support.").

By contrast, the specification provides ***not one example*** for the Board's (and Globus's) interpretation that claim 10's "ramped portions" must "complete one another" to the exclusion of ramped portions having mirrored angles. As an initial matter, the Board's construction that ramped portions must "complete one another" is vague and therefore improper. For example, in the Figure 40 embodiment as

annotated by Globus, there are visible gaps between the two identified "ramped portions," yet the Board never explained how such gaps are consistent with its construction that these gaps "complete" one another.

**Patent Owner Annotated**
**('731 Patent, Figure 40)**




Indeed, the very notion that the ramp portions "complete one another" raises the question: ***how*** do they complete one another? *See* Appx1335 (Ex. 1004)(239) ("[A]pplicant is not claiming how the[ ramped portions] compl[e]ment each other."). The Board's construction is open to many multiple interpretations, and the Final Written Decision provides no guidance save for the one example cited in Fig. 40 that is not even directed to what the specification identifies as "ramped portions."

In addition, the Board relied on the specification's disclosure of "***complementary texturing*** or engagement features" such as interlocking "teeth, ridges, friction increasing elements, keels, or gripping or purchasing projections,"

*i.e.* surfaces that are secured against each other. Appx31 (FWD)(31) (quoting Appx161-62 ('731 patent)(8:36-40, 6:26-28)). This is not consistent with the Figure 40 annotations where the surfaces do not grip one another.

Instead, the Board's reliance on such "complementary texturing" is improper because it is directed to ***unclaimed*** embodiments. Specifically, the "complementary texturing" is directed to Figure 17, which depicts "generally planar" endplates 14 and 16 and "artificial endplates 100." Appx162 ('731 patent)(8:29-33). The specification explains that the artificial endplate's "lower surface 104 ha[s] ***complementary texturing*** or engagement features … to engage with the texturing or engagement features on the upper endplate 14 and the lower endplate 16." Appx162 ('731 patent)(8:36-40). The artificial endplate's lower surface thus has "complementary texturing," such as interlocking teeth, to prevent sliding with the planar endplate 14. The annotated Figure 17 below shows where these surfaces meet and therefore may have complementary texturing:




FIG. 17

Aside from the fact that these disclosures do not preclude complementary surfaces from having mirrored angles, their relevance is diminished because the surfaces described in Figure 17 are ***not*** the claimed ramped portions. First, the specification expressly describes and depicts the surface as "planar," rather than "ramped" as required by claim 10. Moreover, claim 10 requires that the first and second ramped portions "***move outwardly***" or "***move inwards***" relative to one another. Figure 17, by contrast, refers to the surfaces as having "complementary texturing" so that they are securely engaged in order ***prevent*** movement between them. Accordingly, these teachings say nothing about the meaning of "complementary" ramped portions.

### C. The Board's Construction Misconstrues the Prosecution History

The Board's analysis of the prosecution history is fundamentally flawed.[8] The Board agreed with Globus that "that the applicant 'specifically added the disputed claim language to the claims to exclude the 'mirrored' ramp surfaces identified by the Examiner.'" Appx41 (FWD)(41). Yet this was not the case. The prosecution history instead supports Life Spine's construction because it is plain that neither the examiner or the applicant considered "complementary" to exclude ramps with mirrored angles. Indeed, even after the "complementary" language was added, the examiner issued repeated rejections of the limitation as disclosed by the prior art's mirrored ramps. The applicant never disputed that characterization.

As discussed above, the initial set of claims did not recite "ramped portions" at all, much less that they are "complementary." The applicant added such language to the independent claims in response to a rejection in view of Olmos, noting that the new language covered the Figure 40 embodiment. Yet the examiner maintained that the new language was anticipated by Olmos and other prior art references. In response, the "complementary" language was removed from the independent claims. Appx1342-45 (Ex. 1004)(246-49). The language was later re-added to current claim

---

[8] Given that the Board's construction excludes preferred embodiments, the prosecution history could not save the Board's construction unless the applicant disavowed that embodiment. The Board, however, expressly found that there was no disclaimer and, indeed, as discussed above, that claim 10 ***covered*** the embodiment of Fig. 40. Appx43 (FWD)(43); Appx40 (FWD)(40).

10, yet the examiner continued to find the limitation disclosed by Olmos, and the applicant never argued otherwise. Eventually, the applicant was able to traverse Olmos by adding a number of other limitations unrelated to the ramped portions or the "complementary" language.

The Board dismissed this lengthy interaction between the examiner and applicant, instead focusing on the first rejection and the amendment adding the "complementary" language to conclude that it was added to distinguish mirrored ramped portions. Appx41 (FWD)(41). Yet this conclusion does not comport with the applicant's silence to the examiner's repeated rejections, nor with the applicant's identification of Figure 40 as embodying the "complementary" limitation—which as discussed above, has ramped portions with mirrored angles. In view of the full context of the prosecution history, it is clear that neither the Examiner or the applicants considered "complementary" to exclude (or traverse over) prior art the disclosed mirrored ramps.

Thus, the Board legally erred by giving no weight to the examiner's repeated rejections of the "complementary" limitation based on Olmos's mirrored ramped portions, even though the examiner's construction is supposed to "carr[y] ***significant weight***." *St. Clair Intell. Prop. Consultants, Inc. v. Canon Inc.*, 412 F. App'x 270, 276 (Fed. Cir. 2011). The examiner mapped mirrored ramped portions to the "complementary" limitation over a dozen times. Appx1131-34, Appx1136-39,

Appx1151, Appx1153, Appx1164, Appx1166, Appx1175-78, Appx1194-96, Appx1205-07, Appx1209-10, Appx1216, Appx1238-39, Appx1333-36. Indeed, in the first rejection following the amendment, the examiner identified for the first and second ramped portions the same figure and elements from Olmos that Life Spine relied on below:




Appx1335 (Ex. 1004)(239).

Although the Board acknowledged the examiner's "view that ramps that mirror each other are 'complementary with one another'," the Board dismissed that view as only comporting with the "'broadest reasonable interpretation' standard the examiner was required to apply." Appx42 (FWD)(42). Yet the Board did not cite to any evidence—and there exists none in the record—that a skilled artisan would consider the "broadest reasonable interpretation" of the term "complementary" to be any different than its scope under *Phillips*. *See In re CSB-Sys. Int'l, Inc.*, 832 F.3d 1335, 1341 (Fed. Cir. 2016) ("In many cases, the claim construction will be the same

under the *Phillips* and BRI standards."). The Board's conclusion that it could dismiss the examiner's views in favor of the dictionary definition was legally erroneous and not supported by substantial evidence.

Moreover, the Board failed to acknowledge the "examiner's focus in allowing the claims," which the Board must pay "particular attention to." *Convolve, Inc. v. Compaq Computer Corp.*, 812 F.3d 1313, 1322-23 (Fed. Cir. 2016). The examiner allowed the claims not based on the "complementary" limitation (which the examiner repeatedly found to be disclosed in the prior art), but rather based on the belief that the prior art did not disclose "single-threaded" actuators that stay fixed with the driving ramp. Appx1105-30 (Ex. 1004)(9-34).

The Board's error in interpreting the prosecution history is, as discussed above, further underscored the applicant's silence in the face of the examiner's repeated rejections. *TorPharm, Inc. v. Ranbaxy Pharms, Inc.*, 336 F.3d 1322, 1330 (Fed. Cir. 2003) ("Whether the patentee chooses to dispute the examiner's view of matters ***is relevant to claim interpretation***."). After the addition of the ramped portions limitation, including the "complementary" language, the examiner made several rejections mapping mirrored-angle ramps to the new language. *See, e.g.*, Appx1131-34, Appx1136-39, Appx1151, Appx1153, Appx1164, Appx1166, Appx1175-78, Appx1194-96, Appx1205-07, Appx1209-10, Appx1216, Appx1238-

39, Appx1333-36. The examiner also "noted that applicant is not claiming ***how*** the[ ramped portions] compl[e]ment each other." Appx1335 (Ex. 1004)(239).

Yet none of applicant's responses disputed the examiner's mappings or responded to the examiner's invitation to "claim[] how the[ ramped portions] compl[e]ment each other."[9] *Id.* The Board acknowledged but gave no weight to applicant's silence, because the applicant included a boilerplate statement that it was "not conceding in this application that previously pending claims are not patentable over the cited references." Appx43 (FWD)(43) (quoting Appx1191 (Ex. 1004, 95)).

The facts here are similar to those considered in *Cordis Corp. v. Medtronic Ave, Inc.*, 339 F.3d 1352, 1359-60 (Fed. Cir. 2003). In *Cordis*, the examiner had identified a prior art's device as meeting a broad construction of the "plurality of slots" limitation. The Court noted that "[t]he patentee … did not dispute that Ersek's device has a plurality of slots formed therein." *Id.*, 339 F.3d at 1360. As a result, the Court reversed the district court's summary judgment of no infringement based on its narrow construction. Globus's acquiescence in the instant case is far more clear and repeated. The Board should have given the applicant's silence its due

[9] Instead, the applicant's immediate reaction was to remove the "complementary" limitation from all of the independent claims in favor of other amendments. Appx1289-96 (Ex. 1004)(193-200). When the "complementary" limitation was later re-added to then-pending claim 17 (but not any other independent claim), the applicant raised no arguments or even marked (*i.e.* underlined) it as an amendment, suggesting that its addition was likely an error or at best an after-thought. Appx1242-43 (Ex. 1004)(146-47).

weight instead of prioritizing its dictionary definition. *Phillips*, 415 F.3d at 1317 ("[Extrinsic evidence] is less significant than the intrinsic record in determining the legally operative meaning of claim language.").

## II. REMAND IS UNNECESSARY

The Court should reverse the Board's Final Written Decision and enter an order that claims 10 through 14 of the '731 patent are unpatentable. Globus's only argument below for claims 10 through 14 was based entirely on the (erroneous) claim construction of "complementary" that the Board adopted. Thus, there was no dispute below that, if "complementary" is properly construed to include ramped portions with mirrored angles, claims 10 through 14 are unpatentable. Similarly, the Board's Final Written Decision with respect to claims 10 through 14 relies entirely on its erroneous claim construction. As a result, if the Court adopts Life Spine's claim construction for "complementary," there is no need for the Court to remand for further proceedings.

## CONCLUSION

The Board's Final Written Decision should be reversed and the Court should enter an order finding that claims 10 through 14 of the '731 patent are unpatentable.

Dated: December 12, 2024

Respectfully submitted,

*/s/ James M. Glass*

James M. Glass
QUINN EMANUEL URQUHART
& SULLIVAN, LLP
51 Madison Ave., 22nd Floor
New York, NY 10010
(202) 849-7000
jimglass@quinnemanuel.com

*Counsel for Appellant*

# CERTIFICATE OF COMPLIANCE

I hereby certify that this corrected brief complies with the type-volume limitation of Fed. Cir. R. 28.1(b)(2)(A). The brief contains 6,998 words according to the word count of the word-processing system used to prepare the brief, excluding the parts of the brief exempted by Fed. R. App. P. 32(f) and Fed. Cir. R. 32(b).

This brief complies with the typeface requirements of Fed. R. App. P.32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6). The brief has been prepared in a proportionally-spaced typeface, 14 point Times New Roman, using Microsoft Word 360.

Dated: December 12, 2024

*/s/ James M. Glass*
James M. Glass
QUINN EMANUEL URQUHART
& SULLIVAN, LLP
51 Madison Ave., 22nd Floor
New York, NY 10010
(202) 849-7000
jimglass@quinnemanuel.com

*Counsel for Appellant*