No. 2024-2167

# United States Court of Appeals for the Federal Circuit

LIFE SPINE, INC.,
*Appellant*,

v.

GLOBUS MEDICAL, INC.,
*Appellee*.

*On Appeal from the United States Patent and Trademark Office, Patent Trial and Appeal Board in No. IPR2022-01434*

## REPLY BRIEF FOR APPELLANT

May 1, 2025

Michael R. Houston
FOLEY & LARDNER LLP
321 N. Clark St., Suite 3000
Chicago, IL 60654
(312) 832-4500
mhouston@foley.com

George C. Beck
FOLEY & LARDNER LLP
3000 K Street, N.W. Suite 600
Washington, D.C. 20007
(202) 672-5300
gbeck@foley.com

Sarah E. Rieger
FOLEY & LARDNER LLP
777 E. Wisconsin Ave.
Milwaukee, WI 53202
(414) 271-2400
srieger@foley.com

James M. Glass
QUINN EMANUEL URQUHART & SULLIVAN, LLP
51 Madison Ave., 22nd Floor
New York, NY 10010
(212) 849-7142
jimglass@quinnemanuel.com

David A. Nelson
Brianne M. Straka
QUINN EMANUEL URQUHART & SULLIVAN, LLP
191 N. Wacker Dr., Suite 2700
Chicago, IL 60606
(312) 705-7400
davenelson@quinnemanuel.com
briannestraka@quinnemanuel.com

Quincy Lu
QUINN EMANUEL URQUHART & SULLIVAN, LLP
1109 First Ave., Suite 210
Seattle, WA 98101

206-905-7000
quincylu@quinnemanuel.com

*Counsel for Appellant*

# PATENT CLAIM AT ISSUE

Claim 10 of U.S. Patent No. 8,845,731 ("the '731 patent") recites:

> 10. An intervertebral implant comprising:
>
> a first endplate comprising an upper side, a lower side, a ramped surface, the ramped surface extending from the lower side, wherein the first endplate includes a first side portion, the first side portion including a first ramped portion;
>
> a second endplate comprising an upper side, a lower side, a ramped surface, the ramped surface extending from the lower side, wherein the second endplate includes a second side portion, the second side portion including a second ramped portion, wherein the first ramped portion of the first endplate and the second ramped portion of the second endplate are complementary with one another; and
>
> a central ramp comprising an expansion portion and an extension portion extending from the expansion portion, the expansion portion having a first ramped surface for engagement with the ramped surface of the first endplate and a second ramped surface for engagement with the ramped surface of the second endplate, the extension portion configured with an opening,
>
> a driving ramp comprising an expansion portion and an opening extending though the driving ramp in a longitudinal axis, the expansion portion of the driving ramp configured to engage to the first and second endplates,
>
> an actuator member extending through the opening of the driving ramp and configured to engage with the opening in the extension portion of the central ramp,
>
> wherein when the actuator member is actuated in one direction, the driving ramp is fixed with respect to the actuation member and the central ramp is configured to move in a first direction and cause the first and second endplates to move outwardly and away from one another, and when the actuator member is actuated in a second direction, the central ramp is configured to move in a second direction and causes the first and second endplates to move inwards and towards one another.

Appx169.

## CERTIFICATE OF INTEREST

Appellant's undersigned counsel certified that the following information is accurate and complete to the best of counsel's knowledge:

**1. Represented Entities.** Fed. Cir. R. 47.4(a)(1): "The full name of every entity represented in the case by the counsel filing the certificate."

Life Spine, Inc.

**2. Real Party in Interest.** Fed. Cir. R. 47.4(a)(2): "For each entity, the name of every real party in interest, if that entity is not the real party in interest."

N/A

**3. Parent Corporations and Stockholders.** Fed. Cir. R. 47.4(a)(3): "For each entity, that entity's parent corporation(s) and every publicly held corporation that owns ten percent (10%) or more of its stock."

N/A

**4. Legal Representatives.** Fed. Cir. R. 47.4(a)(4): "The names of all law firms, partners, and associates that have not entered an appearance in the appeal, and (A) appeared for the entity in the lower tribunal; or (B) are expected to appear for the entity in this court."

Jeffrey N. Costakos, Foley & Lardner LLP

Scott D. Anderson, Foley & Lardner LLP

**5. Related Cases.** Fed. Cir. R. 47.4(a)(5): "An indication as to whether there are any related or prior cases, other than the originating case number(s), that meet the criteria under Federal Circuit Rule 47.5."

*Globus Medical Inc. v. Life Spine, Inc.*, 21-cv-1445 (D. Del.)

**6. Organizational Victims and Bankruptcy Cases.** Fed. Cir. R. 47.4(a)(6): "All information required by Federal Rule of Appellate Procedure 26.1(b) and (c) that identifies organizational victims in criminal cases and debtors and trustees in bankruptcy cases."

N/A

*/s/ James M. Glass*
JAMES M. GLASS
Counsel for Appellant
May 1, 2025

# TABLE OF CONTENTS

**Page**

CERTIFICATE OF INTEREST ........................................ i

TABLE OF AUTHORITIES ........................................ iv

INTRODUCTION ........................................ 1

ARGUMENT ........................................ 2

I. THE BOARD'S CONSTRUCTION EXCLUDES THE FIGURE 40 EMBODIMENT ........................................ 2

II. THE BOARD FAILED TO PROPERLY CONSIDER THE PROSECUTION HISTORY ........................................ 11

III. THE BOARD'S CONSTRUCTION IS VAGUE ........................................ 18

IV. THE BOARD'S ELEVATION OF ITS DICTIONARY DEFINITION OVER THE INTRINSIC EVIDENCE WAS IMPROPER ........................................ 20

V. GLOBUS'S OTHER ART CANNOT PRECLUDE THE INTRINSIC EVIDENCE ........................................ 24

VI. MR. DREWRY'S TESTIMONY IS CONSISTENT WITH THE INTRINSIC AND EXTRINSIC EVIDENCE ........................................ 26

CONCLUSION ........................................ 28

CERTIFICATE OF COMPLIANCE ........................................ 30

CERTIFICATE OF SERVICE ........................................ 31

# TABLE OF AUTHORITIES

## Cases

*Anderson v. Int'l Engineering & Manufacturing, Inc.*,
160 F.3d 1345 (Fed. Cir. 1998) ........ 23

*Aspex Eyewear, Inc. v. Marchon Eyewear, Inc.*,
673 F.3d 1335 (Fed. Cir. 2012) ........ 9

*Blue Calypso, LLC v. Groupon, Inc.*,
815 F.3d 1331 (Fed. Cir. 2016) ........ 9

*Convolve, Inc. v. Compaq Computer Corp.*,
812 F.3d 1313 (Fed. Cir. 2016) ........ 11, 16

*In re CSB-Sys. Int'l, Inc.*,
832 F.3d 1335 (Fed. Cir. 2016) ........ 14

*Eidos Display, LLC v. AU Optronics Corp.*,
779 F.3d 1360 (Fed. Cir. 2015) ........ 21

*Guardant Health, Inc. v. Vidal*,
2023 WL 3262962 (Fed. Cir. 2023) ........ 28

*Imaginal Systematic, LLC v. Leggett & Platt, Inc.*,
805 F.3d 1102, 1111 (Fed. Cir. 2015) ........ 22

*Interactive Gift Exp., Inc. v. Compuserve Inc.*,
256 F.3d 1323 (Fed. Cir. 2001) ........ 2

*Lynk Labs, Inc. v. Samsung Electronics Co.*,
125 F.4th 1120 (Fed. Cir. 2025) ........ 9

*MBO Laboratories, Inc. v. Becton, Dickinson & Co.*,
474 F.3d 1323 (Fed. Cir. 2007) ........ 14, 24, 25, 26

*Phillips v. AWH Corp.*,
415 F.3d 1303 (Fed. Cir. 2005) ........ 20, 22, 27

*Renishaw PLC v. Maposs Societa' Per Azioni*,
158 F.3d 1243 (Fed. Cir. 1998) ........ 23

*Seabed Geosolutions (US) Inc. v. Magseis FF LLC*,
8 F.4th 1285 (Fed. Cir. 2021)....................3, 4, 12

*St. Clair Intell. Prop. Consultants, Inc. v. Canon Inc.*,
412 F. App'x 270 (Fed. Cir. 2011)....................11, 15

*Starhoe GmbH v. AT&T Mobility LLC*,
743 F.3d 849 (Fed. Cir. 2014)....................22, 23

*Thorner v. Sony Computer Entertainment America LLC*,
669 F.3d 1362....................15

*TorPharm, Inc. v. Ranbaxy Pharms, Inc.*,
336 F.3d 1322 (Fed. Cir. 2003)....................12, 16

*Vitronics Corp. v. Conceptronic, Inc.*,
90 F.3d 1576 (Fed. Cir. 1996)....................4, 22

**Other Authorities**

37 C.F.R. § 42.6(a)(3)....................28

American Heritage Dictionary....................24

# INTRODUCTION

Intrinsic evidence is ***paramount*** in claim construction. Here, the intrinsic evidence is critical, as the specification and the prosecution history confirm that the ordinary meaning of the disputed claim term ***includes*** the Figure 40 embodiment, which has "ramped portions" with mirrored angles. The applicants identified Figure 40 as support for the disputed "ramped portion[s]" that are "complimentary" when they amended the claims to added that limitation. Moreover, the examiner interpreted "complementary" as including ramped portions with mirrored angles—and did so over a dozen times. And not once did the applicant respond by disputing the examiner's interpretation—instead, the applicant ***removed*** the limitation and focused on arguing and amending other limitations to overcome the prior art. Yet here, Globus's arguments focus instead on defending the Board's use of extrinsic evidence, burying their analysis of the most important intrinsic evidence—Figure 40—near the end of its brief.

The Board erred by ignoring key disclosures about Figure 40, instead adopting a dictionary definition that excludes that embodiment. As explained in the Blue Brief, the features that the specification expressly identifies as "ramped portions" in Figure 40 have mirrored angles. The Board's construction excludes those elements

from its definition, a point Globus does not dispute. BlueBr. 40-46.[1] Globus instead relies on other features in the Figure 40 embodiment that are ***not*** identified as ramped portions and argues that because they supposedly "complet[e] one another," the Figure 40 embodiment is not excluded. Globus would therefore ask the Court to ignore the express teachings of the specification.

Accordingly, the intrinsic evidence overwhelming shows that the Board erred. Court should reverse the Board's Final Written Decision and enter an order finding that claims 10 through 14 of the '731 patent are unpatentable.[2]

## ARGUMENT

### I. THE BOARD'S CONSTRUCTION EXCLUDES THE FIGURE 40 EMBODIMENT

The Board's construction that the device's "ramped portion[s]" must be "complementary" and cannot have mirrored angles excludes the Figure 40 embodiment.[3] This is the only reasonable conclusion that can be reached from the

[1] Because the Opening Brief did not include page numbers, and consistent with Globus's citation format in its Red Brief, Life Spine cites to the ECF stamped page numbers in the Blue Brief.

[2] Globus does not dispute that if the Court adopts Life Spine's construction of "complementary," there is no need to remand. BlueBr. 52.

[3] Globus argues that this theory should not be considered because Life Spine did not rely on the Figure 40 embodiment below. RedBr. 47-48. Globus misstates the law. There is no question that Life Spine argues here for the same claim construction it argued below. And Federal Circuit precedent allows a party on appeal to rely on the specification to support that same claim construction, regardless of whether it was presented below. *Interactive Gift Exp., Inc. v. Compuserve Inc.*, 256 F.3d 1323, 1347 (Fed. Cir. 2001) ("Accordingly, we hold that arguments that are based on a

following uncontested facts: (1) the "complementary" limitation covers the Figure 40 embodiment, as the applicant made clear during prosecution, and (2) the only "ramped portions" identified in the Figure 40 embodiment have mirrored angles.

Claim 10 requires a "first endplate" that comprises a "first side portion including a ***first ramped portion***," and a "second endplate" that comprises a "second side portion including a ***second ramped*** portion," wherein the first and second ramped portions are "complementary with one another." When the applicant amended the claims to add the "complementary" limitation, the applicant unambiguously stated that the "amendments cover, for example, the embodiment illustrated in FIG. 40 … and described in its associated disclosure." Appx1347 (Ex. 1004)(251). The applicant therefore gave notice to the public that the Figure 40 embodiment and its corresponding description was highly relevant to the scope of

---

specification in evidence and that are in support of an existing claim construction are not barred by the doctrine of waiver for the sole reason that they were not first presented to the trial court."); *Seabed Geosolutions (US) Inc. v. Magseis FF LLC*, 8 F.4th 1285, 1289 (Fed. Cir. 2021) ("The doctrine of waiver does not preclude a party from supporting its original claim construction with new citations to intrinsic evidence of record."). Besides, Figure 40 was cited by both Globus and the Board in support of its erroneous construction, and Life Spine relied on the prosecution history in support of its claim construction, where the applicant cited to Figure 40 when adding the limitation.

the "complementary" limitation. *Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1583 (Fed. Cir. 1996) ("The claims, specification, and file history, rather than extrinsic evidence, constitute the public record of the patentee's claim, a record on which the public is entitled to rely.").

Turning to the description of the embodiment depicted in Figures 40 through 44[4] found in the specification, its "ramped portions" have mirrored angles. In particular, and as described in Life Spine's opening brief, the Figure 40 embodiment has two endplates 14 and 16 which are "substantially identical." Appx164-165 ('731 Patent)(12:56-13:2). The '731 patent describes that each endplate has "first ramped portions 306, 308" and "second ramped portions 310, 312." Appx165 ('731 Patent)(13:19-45). The first endplate's first ramped portion and second endplate's second ramped portion are labeled in the annotated Figures 40 and 43 below.[5]

---

[4] Globus does not dispute that Figures 40 through 44 all depict the same embodiment of an "expandable fusion device 10" at different angles and different expansion states. Appx164 ('731 Patent)(12:47-48).

[5] The specification refers to two first ramped portions and two second ramped portions for each endplate, with each corresponding to a particular side portion of the endplate. Appx165 ('731 Patent)(13:19-45). This can be seen in Figure 45, which depicts one of the endplates with two side portions 202 and 204. *Id.* The first ramped portions are on the right side of the side portions and the second ramped portions are on the left side of the side portions. *Id.*




**’731 Patent, Figure 40 (annotated by Life Spine)**




**’731 Patent, Figure 43 (annotated by Life Spine)**

Globus does not dispute that these ramped portions have mirrored angles, nor does Globus dispute that these are the ***only*** “ramped portions” expressly identified as such in the Figure 40 embodiment. The Board’s construction therefore unquestionably excludes the only elements the specification describes as “ramped

portions," even though, as Life Spine's opening brief explained, such ramped portions are consistent with the plain meaning of "complementary." BlueBr. 37-46. Specifically, as Life Spine's expert testified, the ordinary meaning of "complementary" parts in light of the specification includes parts that "interact in a generally identical, symmetrical way," which includes ramped portions that had the "same angle relative to the common plane between them." Appx942 (Drewry Decl.)(¶182). And that is precisely what Figure 40 depicts with its identified "ramped portions."

Globus instead argues that the Board's construction does not exclude the Figure 40 embodiment because portions that the specification does ***not*** identify as "ramped portions" nevertheless "complete one another" and so must be the claimed "ramped portions." RedBr. 48-49, 50-51; Appx39-40 (FWD)(39-40) (citing Appx598 (POR)(82)). Globus further argues that because the ***actual identified ramped portions*** are not described as "complementary," they are not the claimed ramped portions.

**Patent Owner Annotated**
**('731 Patent, Figure 40)**




First, Globus's labeled elements are ***never*** identified by the '731 Patent as "ramped portions"—instead, the '731 Patent describes them as "***bridge portion[s]*** 314 connecting the first ramped portions 306, 308 and the second ramped portions 310, 312." Appx165 ('731 Patent)(13:32-34). This can be seen in the below annotated Figure 45, which is a depiction of one of the endplates:




**’731 Patent, Figure 45 (annotated by Life Spine)**

Regardless, Globus’s approach is backwards. Beginning with the Board’s dictionary definition of “complete one another,” Globus excludes what the specification identifies as “ramped portions” because they do not meet that definition, and includes what the specification does not identify as “ramped portions” because they supposedly meet the dictionary definition. Globus’s approach gives primacy to the dictionary definition, ***not*** what the specification actually describes as “ramped portions.” Even if one were to erroneously accept that the “bridged portion” meets the claimed “ramped portion,” that does not justify the Board’s narrow construction that excludes what the specification actually calls the “ramped portions.” BlueBr. 40-46.

Furthermore, that the identified "ramped portions" are not explicitly described as "complementary" is not a reason to reject their obvious relevance. The recent case *Lynk Labs, Inc. v. Samsung Electronics Co.*, 125 F.4th 1120 (Fed. Cir. 2025) is instructive. There, the Court was tasked with construing the term "a plurality of LEDs connected in series." *Id.* at 1133. Although "nowhere [wa]s this exact phrase used or defined in the specification," the Court concluded that the term should be broadly construed to include both individual LEDs connected in a series and groups of LEDs connected in a series because "[t]he specification includes examples of both," including figures of both. *Id.* Similarly, in *Aspex Eyewear, Inc. v. Marchon Eyewear, Inc.*, 673 F.3d 1335 (Fed. Cir. 2012), the Court construed "rearwardly directed free end" in view of how the figures depicted the "rearwardly directed" arms of the device even though "the specification does not use the term 'free' in reference to the rearwardly directed end portion." *Id.* at 1348. Consistent with these holdings, the Court should construe "complementary" "ramped portion[s]" consistent with how the identified ramped portions are depicted in Figures 40 through 44, even though they are not expressly described as "complementary." Indeed, the bridged portions that Globus identifies are also not described as being "complementary."

And relevant to this inquiry, "when examining the written description for support for the claimed invention, [the Court] ha[s] held that the exact terms appearing in the claim need not be used *in haec verba*." *Blue Calypso, LLC v.*

*Groupon, Inc.*, 815 F.3d 1331, 1345 (Fed. Cir. 2016) (quotations removed). Globus is therefore wrong as a matter of law that the identified "ramped portions" are not claimed merely because they are not described as "complementary." RedBr. 50.

Globus's only argument for excluding Figure 40's ramped portions relies on an embodiment that Globus does not even contend embodies Claim 10—the '731 patent's disclosure of "complementary texturing or engagement features." RedBr. 45-47; Appx31 (FWD)(31) (quoting Appx161-62 ('731 patent)(8:36-40, 6:26-28)). Globus argues that this portion of the specification justifies the exclusion of the specification's express identification of ramped portions with mirrored angles. RedBr. 45-47. Yet nothing about the term "complementary texturing" shows that "complementary" necessarily limited to "complet[ing] one another," especially when it excludes the claimed embodiment. And because the "complementary texturing" is not a claimed embodiment, it has far less relevance than Figure 40's ramped portions.

Finally, Globus's argument that the Board simply construed "complementary" to "ha[ve] the same meaning" for both the claims and specification is simply not true. RedBr. 46. A proper construction of "complementary" ramped portions would have considered both the intrinsic evidence regarding the unclaimed "complementary texturing" ***and*** the claimed configuration of Figure 40's "ramped portions." It is ***Life Spine's*** construction that accounts for both, whereas Globus's

construction completely ignores the latter. Accordingly, Globus's argument that Life Spine asks the Court to ignore "complementary texturing" is a strawman. RedBr. 46-47.

## II. THE BOARD FAILED TO PROPERLY CONSIDER THE PROSECUTION HISTORY

The prosecution history is in accord with the specification's treatment of "ramped portion[s]" that are "complementary."

As Life Spine's opening brief explained, the Board failed to give proper weight to (1) the examiner's clearly expressed view that "complementary" includes mirrored angled "ramped portions," (2) the applicant ***withdrawing*** the amendment and otherwise repeatedly declining to dispute the examiner's construction, and (3) the examiner allowing the claims after applicant amended completely different limitations, none of which is in dispute. BlueBr. 47-52. The applicant's actions acquiescence to the examiner's unwavering construction of "complementary" is explained by its consistency with the Figure 40 embodiment's description—the very embodiment the applicant stated was covered by the limitation. Yet despite this Court's precedent requiring the Board to give this history "significant weight," the Board failed to do so, instead dismissing the examiner's interpretation as merely the term's "broadest reasonable interpretation." Appx42 (FWD)(42); *St. Clair Intell. Prop. Consultants, Inc. v. Canon Inc.*, 412 F. App'x 270, 276 (Fed. Cir. 2011) (holding that the examiner's construction "carries significant weight"); *Convolve*,

*Inc. v. Compaq Computer Corp.*, 812 F.3d 1313, 1322-23 (Fed. Cir. 2016) ("In determining the scope of the claims, we … pay[] particular attention to the examiner's focus in allowing the claims after amendment.").

Globus argues in response that the applicant expressly distinguished the limitation from Olmos's mirrored angled ramped portions when it first made the amendment. RedBr. 56-57. The prosecution history does not support such a conclusion.[6] When the examiner rejected the applicant's argument by interpreting "complementary" to include ramped portions with mirrored angles, applicant's immediate response was to ***remove*** the limitation and focus on amending different limitations. Appx1289-96 (Ex. 1004)(193-200). Neither the Board nor Globus addressed this reversal of the amendment, even though Federal Circuit precedent requires it. *TorPharm, Inc. v. Ranbaxy Pharms, Inc.*, 336 F.3d 1322, 1330 (Fed. Cir. 2003) ("Such acquiescence may be found where the patentee … lets stand an examiner's restrictive interpretation of a claim."). And the applicant ***never*** reraised this contention despite the examiner repeatedly maintaining that the prior art discloses "complementary" "ramped portions." BlueBr. 17-18 (providing citations).

---

[6] Globus claims this argument was not raised below and therefore waived. RedBr. 56. Not so. Life Spine repeatedly argued below that the totality of the prosecution history, including the applicant's actions following the examiner's rejection (or lack thereof), does not support the Board's construction. *See, e.g.*, Appx616-18 (Pet. Reply)(5-7). Regardless, as discussed above, it is proper to rely on any record intrinsic evidence in support of the same claim construction raised below. *Seabed Geosolutions*, 8 F.4th at 1289.

When the limitation was added back to claim 10, the applicant did not mark it as an amendment (*i.e.*, the applicant did not indicate the amendment by underlining it) and made no mention of the amendment in its response, let alone note that it distinguished the prior art. Appx36 (FWD)(36); Appx1242-43 (Ex. 1004)(146-47) (re-adding the limitation without indicating it was an amendment); Appx1245-48 (Ex. 1004)(149-52) (applicant's response making no mention of re-added limitation); Appx1196-97 (Ex. 1004)(100-01) (noting applicant's failure to indicate the addition was an amendment). Instead, the applicant focused on other amendments to distinguish the prior art. Appx1245-48 (Ex. 1004)(149-52); Appx1114-24 (Ex. 1004)(18-28) (applicant remarks preceding notice of allowance). Thus, following the examiner's rejection interpreting "complementary" as including Olmos's mirrored-angled ramped portions, the applicant never argued that the "complementary" limitation distinguished the prior art.

Globus argues that the examiner's construction was "not reasonable." RedBr. 58. However, the Board never held that the examiner's construction was unreasonable—instead, the Board dismissed the examiner's construction because it "at best comports with the 'broadest ***reasonable*** interpretation' standard the Examiner was required to apply, but does not comport with the *Phillips* claim construction standard applicable here." Appx42 (FWD)(42). The Board was not justified in holding that the term "complementary" had different meanings under the

different standards—especially when the examiner's interpretation comported entirely with the specification. *In re CSB-Sys. Int'l, Inc.*, 832 F.3d 1335, 1341 (Fed. Cir. 2016) ("In many cases, the claim construction will be the same under the *Phillips* and BRI standards."). Globus argues that "the specification, the dictionary, Olmos, Baynham etc." does justify a different construction under *Phillips*. But as explained above, the specification comports with the ***examiner's*** construction, not the Board's construction—and the specification is "the single best guide to the meaning of a disputed term." *MBO Laboratories, Inc. v. Becton, Dickinson & Co.*, 474 F.3d 1323, 1329 (Fed. Cir. 2007).

Globus argues that the applicant did not, in fact, acquiesce to the examiner's construction, because the limitation was specifically added to overcome Olmos. RedBr. 61; *see also* RedBr. 63 ("[T]he applicant explicitly stat[ed] it did not agree with that interpretation …."). That is an impossibility. The applicant's amendment could ***not*** have disagreed with the examiner's interpretation, because the examiner obviously had no opportunity to construe "complementary" "ramped portion[s]" ***before*** the term was added to the claims. Once the term was added, the examiner repeatedly made clear his position that the Olmos's mirrored angled ramps met the "complementary" "ramped portion[s]" limitation (*see* BlueBr. 48-49 (providing citations)). Not once did the applicant address the examiner's position—instead, the applicant's immediate response was to ***withdraw*** the amendment. Appx1289-96

(Ex. 1004)(193-200). And when the limitation was later re-added (though only to claim 10), the applicant did not mark it as an amendment and did not reraise its contention that the limitation distinguished the prior art despite having multiple opportunities to do so. Appx1242-48 (Ex. 1004)(146-52). This is clear evidence that the applicant acquiesced to the examiner's construction which the Board failed to properly weigh.

Globus further argues that the applicant did not acquiesce to the examiner's construction because the applicant included a boilerplate statement that it was "not conceding in this application that previously pending claims are not patentable over the cited references." Appx1191 (Ex. 1004)(95). But no specific statement was made about the "complementary" limitation. The weight of the evidence therefore indicates that the applicant acquiesced. And this evidence is certainly not "clear and unmistakable" enough to constitute disclaiming the Figure 40 embodiment. *Thorner v. Sony Computer Entertainment America LLC*, 669 F.3d 1362, 1366-67 ("To constitute disclaimer, there must be a clear and unmistakable disclaimer)..

As Life Spine's opening brief explained, this Court's precedent required the Board to consider the examiner's construction, the applicant's withdrawal of the limitation following that construction, the applicant's silence in the face of said construction, and the fact the examiner allowed the claims in view of different amendments. BlueBr. 48-50 (citing *St. Clair Intell. Prop. Consultants, Inc. v. Canon*

*Inc.*, 412 F. App'x 270, 276 (Fed. Cir. 2011); *Convolve, Inc. v. Compaq Computer Corp.*, 812 F.3d 1313, 1322-23 (Fed. Cir. 2016); *TorPharm*, 336 F.3d at 1330). Globus argues that such precedent can be dismissed because "there is no evidence supporting the broader meaning proposed by Life Spine," except the examiner's construction. RedBr. 62-63. This, however, ignores that the ***specification itself*** supports Life Spine's construction.

Globus ironically agrees with the Board's holding that there is "no precedent where a patentee was found to disclaim the plain and ordinary meaning of a claim term based on an alleged acquiescence to a broader meaning ascertained from an examiner's application of prior art to the claimed [sic]." Appx43 (FWD)(43). Life Spine, of course, does not contend there was any disclaimer or disavowal. Instead, consistent with the plain meaning of "complementary," the specification's Figure 40 embodiment discloses "ramped portions" that have mirrored angles, and that comports with the examiner's construction and the applicant's silence. It is ***Globus*** who wishes to disclaim the specification's teachings based on a shallow reading of the prosecution history, which is improper.

Globus concedes that "[w]hether the patentee chooses to dispute the examiner's view of matters is relevant to claim construction." RedBr. 63; BlueBr. 50 (quoting *TorPharm*, 336 F.3d at 1330). Yet Globus is incorrect that the "applicant made it clear it did ***not*** agree with the Examiner's interpretation of

'complementary.'" RedBr. 63. The applicant ***never*** disputed the examiner's interpretation of "complementary" following its addition to the claims. BlueBr. 50-51. Accordingly, *TorPharm*'s holding that "[a] patentee is not required to fight tooth and nail every possibly adverse thought an examiner commits to paper" is simply inapposite, because the applicant here did not muster a single word against the examiner's construction.

Globus next argues that *Cordis* is distinguishable because that case dealt with whether the applicant had disclaimed the broader plain meaning of the term "slots formed therein," finding that applicant did not make any disclaimer. RedBr. 64-65. Globus fails to recognize that here, the Board's construction ***excludes*** the specification's Figure 40 embodiment's ramped portions, which can only be permissible if the applicant disclaimed such ramped portions during prosecution. The applicant did the opposite, making clear that the Figure 40 embodiment is covered by the "complementary" limitation. Appx1347 (Ex. 1004)(251). *Cordis*'s holding therefore applies: the applicant's silence to the examiner's broader construction must be considered to support Figure 40's expressly-identified ramped portions.

Finally, Globus is simply incorrect that Life Spine's claim construction theory "is premised on this Court elevating the Examiner's unreasonable claim construction above the plain and ordinary meaning." RedBr. 65. Life Spine's claim construction

plainly relies on ***the specification*** and the term's plain meaning, and it is ***Globus*** who wishes to depart from that based on the applicant introducing the limitation to distinguish Olmos, requiring that the Court ignore the rest of the voluminous prosecution history.

## III. THE BOARD'S CONSTRUCTION IS VAGUE

Life Spine's opening brief explained that the Board's construction was also improper because it was vague. BlueBr. 43-44. In particular, the Board failed to explain how its construction was consistent with the presence of gaps in the "complementary" so-called "ramped portions" from Globus's annotated Figure 40. *Id.*

Globus's response demonstrates the unworkable ambiguity of the Board's construction. Globus argues that gaps where the ramped portions meet are allowable as long as a "part of the sidewall" of each ramped portion completes one another. RedBr. 53-54. This is demonstrated by Globus's annotations, in particular, the "red-highlighted portion" from below. RedBr. 54.




**’731 Patent, excerpt of Figure 40 (annotated by Globus)**

Yet Globus’s position merely raises more questions. It is unclear how “ramped portions” with gaps between them could “***complete*** one another.” Moreover, Globus does not address how much of the ramped portions must touch before they are considered to “complete one another.” Based on Globus’s position that the claim is met by any part meeting, it would appear that even a micron would be enough, which can hardly be said to be ramped portions “complet[ing] one another.”

And Globus’s *post hoc* explanation of the Board’s vague construction cannot be found anywhere in the Board’s Final Written Decision. Thus, the ***Board’s*** decision provides a construction that is fatally ambiguous.

## IV. THE BOARD'S ELEVATION OF ITS DICTIONARY DEFINITION OVER THE INTRINSIC EVIDENCE WAS IMPROPER

In defending the Board's erroneous construction, Globus makes a telling admission: that the Board "consulted a general-purpose dictionary to ascertain whether the claim and specification use 'complementary' consistent with its ordinary meaning" and that "[b]ecause they do, and because the patentee did not redefine 'complementary' or disclaim during prosecution, the Board correctly determined that the ordinary meaning applies." RedBr. 35. In other words, the Board did what *Phillips* warns not to do: determine if the intrinsic evidence is "consistent with" the dictionary definition, rather than give primacy to the intrinsic evidence. *Phillips v. AWH Corp.*, 415 F.3d 1303, 1319 (Fed. Cir. 2005) ("While the court noted that the specification must be consulted in every case, it suggested a methodology for claim interpretation in which the specification should be consulted only after a determination is made, whether based on a dictionary, treatise, or other source, as to the ordinary meaning or meanings of the claim term in dispute. … That approach, in our view, improperly restricts the role of the specification in claim construction.").

That the Board's approach was erroneous is plain. In its Final Written Decision, ***before*** discussing the intrinsic evidence, the Board pointed out that it had "preliminarily construed" the term "complementary" in its Institution Decision. Appx28 (FWD)(28). Notably, that definition came from a dictionary that the Board *sua sponte* entered into evidence. Appx459 (Institution Decision)(20). The Board

then looked to the intrinsic evidence to determine if it was consistent. The Board first noted the claims themselves do not indicate "that the term is accorded a special meaning." Appx29 (FWD)(29). The Board then focused on the specification's use of the word "complementary" to conclude that "[t]his example is consistent with" the Board's dictionary definition. Appx31 (FWD)(31). The Board, of course, ignored that this portion of the specification was not directed to a claimed embodiment, and ignored that Figure 40 (the claimed embodiment) is described as having "ramped portions" with mirrored angles. The Board then looked to the prosecution history, relying on the applicant's citation to Figure 40 "when it added the 'complementary with one another' limitation" as "consistent with our preliminary construction," *i.e.*, its dictionary definition. Appx39 (FWD)(39). Finally, the Board looked to two extrinsic prior art references, finding that they "are also consistent with a plain meaning of 'complementary' as indicating 'completing.'" Appx41 (FWD)(41). Thus, it is evident that the Board used its hand-picked dictionary definition as its lodestar when looking at the intrinsic and extrinsic evidence.

Yet had the Board properly followed *Phillips,* the Board would not have turned to its dictionary definition in the first instance, for, as discussed above, it is not even in dispute that the specification discloses ramped portions with mirrored angles. *Eidos Display, LLC v. AU Optronics Corp.*, 779 F.3d 1360, 1365 (Fed. Cir.

2015) ("To the extent the district court considered extrinsic evidence in its claim construction order or summary judgment order, that evidence is ultimately immaterial to the outcome because the intrinsic record is clear.").

Globus relies on a number of cases that approve the use of dictionaries. *Phillips* itself does not preclude the use of dictionaries, nor does Life Spine argue so. But *Phillips* and all of Globus's cited cases make clear: the dictionary definition must give way to the intrinsic evidence. *Phillips*, 415 F.3d at 1322-23 ("[J]udges are free to consult dictionaries and technical treatises … so long as the dictionary definition does not contradict any definition found in or ascertained by a reading of the patent documents."); *Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1582 (Fed. Cir. 1996) ("[The specification] is the single best guide to the meaning of a disputed term.").

Thus, in *Imaginal Systematic, LLC v. Leggett & Platt, Inc.*, the Court reemphasized that a dictionary is proper "so long as [it] does not contradict any definition found in or ascertained by a reading of the patent documents." 805 F.3d 1102, 1111 (Fed. Cir. 2015). The Court accordingly allowed the use of a dictionary because the specification did not contradict it. That is not applicable here where the specification ***directly contradicts*** the Board's dictionary definition.

Similarly, in *Starhoe GmbH v. AT&T Mobility LLC*, the Court again repeated *Phillips*'s requirement that dictionary definitions "not contradict any definition

found in or ascertained by a reading of the patent documents." 743 F.3d 849, 856 (Fed. Cir. 2014). Unlike in the instant case, the Court in *Starhoe* found no contradiction between the specification and the dictionary definition.

Globus argues that Life Spine's citation to *Anderson v. Int'l Engineering & Manufacturing, Inc.* undermines Life Spine's position because it held that the definition of a word is taken "from the context in which it was used by the inventor." RedBr. 36 (quoting 160 F.3d 1345, 1348-49 (Fed. Cir. 1998)). Globus, however, ignores that this case does not support the use of a general-purpose dictionary to define technical terms. BlueBr. 39. In any case, Globus is wrong the inventor used the word "complementary" to refer to "two parts that complete one another, not parts that merely mirror one another." RedBr. 36. As explained above and in Life Spine's opening brief, the ***inventor*** stated that "complementary" "ramped portion[s]" is embodied by Figure 40 and that embodiment has "ramped portions" with mirrored angles. BlueBr. 40-46. Globus is flatly incorrect that "the specification supports only one meaning of the term 'complementary,'" especially since Globus does not even dispute that Figure 40's "ramped portions" have "mirrored angles." RedBr. 37.

Thus, Life Spine's reliance on *Renishaw PLC v. Maposs Societa' Per Azioni*, 158 F.3d 1243, 1250 (Fed. Cir. 1998), is wholly appropriate, as the dictionary definition chosen by the Board "flies in the face of" Figure 40's "ramped portions" that have mirrored angles. *Id.*; BlueBr. 39-40.

Finally, Globus argues that the Board properly chose "completing" from the list of definitions found in the American Heritage Dictionary because it is "[t]he only definition consistent with the usage in the specification and the field of physical mechanics." RedBr. 37-38. But as discussed above, "completing" as understood by the Board, *i.e.* to the exclusion of mirrored angles, is not consistent with the specification. And Globus fails to address Life Spine's argument—which is that ***none*** of the American Heritage Dictionary definitions have anything to do with spinal implant devices. Globus instead argues that other evidence "demonstrat[ed] that 'complementary' is used in accordance with its common meaning in the field of spinal fusion implants." RedBr. 44. Yet the Board did not account for the most important objective evidence—the specification.

## V. GLOBUS'S OTHER ART CANNOT PRECLUDE THE INTRINSIC EVIDENCE

Globus follows its erroneous defense of the Board's dictionary definition with a discussion of other prior art—not the specification or prosecution history as *Phillips* requires. Globus maintains that such art is the only "credible evidence" for understanding "complementary," which turns the claim construction analysis on its head. RedBr. 38. To the contrary, the most relevant evidence for construing "complementary" is the specification and prosecution history, which support Life Spine's construction as discussed above. *MBO Laboratories*, 474 F.3d at 1329 ("The most relevant source is the patent's specification, which is the single best guide

to the meaning of a disputed term. Next in importance is the prosecution history, which is also part of the 'intrinsic evidence' that directly reflects how the patentee has characterized the invention.") (quotations and citations removed). Accordingly, Globus and the Board cannot rely on Olmos, Baynham,[7] and Christensen to exclude the clear disclosures in the specification and prosecution history. RedBr. 39-41; Appx40-41 (FWD)(40-41).

Globus argues that Life Spine "***never*** argued to the Board that these references [Olmos, Baynham, Christensen] are inconsistent with the plain and ordinary meaning, or that they somehow support Life Spine's broad construction." RedBr. 41-42. But it is not Life Spine's position that the plain meaning of "complementary" excludes those references. Instead, "complementary" "ramped portion[s]" must be construed to include the Figure 40 embodiment, which expressly has "ramped portions" with mirrored angles. It is Globus not Life Spine that proposes ignoring important intrinsic evidence in construing the term.

Globus also argues that Life Spine cites "no *credible* evidence that 'complementary' has ever been used—either inside or outside the field of spinal fusion implants—to refer to two parts that do not complete one another." RedBr.

[7] Globus argues that Olmos and Baynham are "intrinsic evidence because they were cited during prosecution." RedBr. 40. However, such evidence is given significantly less weight than the specification and prosecution history of the instant patent. *MBO Laboratories*, 474 F.3d at 1329.

42. The specification and the prosecution history are not just credible evidence—they are the most relevant evidence for construing the term. *MBO Laboratories*, 474 F.3d at 1329.

Accordingly, the only construction that is consistent with ***all*** of the intrinsic and extrinsic evidence is the construction proposed by Life Spine, not the narrow construction adopted by the Board.

## VI. MR. DREWRY'S TESTIMONY IS CONSISTENT WITH THE INTRINSIC AND EXTRINSIC EVIDENCE

As Life Spine's expert testified, the ordinary meaning of "complementary" ramped portions in light of the specification includes ramped portions that "interact in a generally identical, symmetrical way." Appx942 (Drewry Decl.)(¶182). Between the parties' competing experts, it is Mr. Drewry's testimony that is entirely consistent with ***all*** of the intrinsic and extrinsic evidence, as it encompasses the teachings of the specification, the position of the examiner ***and*** the applicant during prosecution, the prior art references Olmos, Baynham, and Christensen, and the Board's dictionary definition.

Globus responds that Mr. Drewry's testimony was "unsubstantiated." RedBr. 42. But Mr. Drewry's testimony is substantiated by the intrinsic and extrinsic evidence, and especially the very embodiment that the applicant identified as encompassing Claim 10. Globus nevertheless claims that "the specification never uses 'complementary' in the manner proposed by Mr. Drewry." RedBr. 42. But

more importantly the ***claims in view of the specification*** uses "complementary" in such a fashion. Specifically, and this is not in dispute, the claims require "complementary" "ramped portion[s]" and Figure 40's "ramped portion[s]" are ramped portions that "interact in a generally identical, symmetrical way." Appx942 (Drewry Decl.)(¶182).

Globus further takes issue with Mr. Drewry's testimony, dismissing it as merely "discussing academic concepts like 'common planes,' 'horizontal planes,' 'symmetrical expansion,' 'asymmetrical forces,' 'symmetrical movement,' and 'machine tolerances.'" RedBr. 43 (quoting Appx942 (Drewry Decl.)(¶182)). Yet such concepts are highly relevant to this field, which Globus does not dispute. And an expert's testimony regarding the plain meaning of a term deserves as much credence as a dictionary—especially when the former comports with the intrinsic evidence and the latter does not. *Phillips*, 415 F.3d at 1317-18.

Globus also argues that Mr. Drewry does not "cite any credible evidence showing that the term 'complementary' has ever been used in the different manner he proposes." Red Br. 43. To the contrary, both the examiner and the '731 Patent itself use the term "complementary" in accordance with Mr. Drewry's testimony. Globus claims Life Spine ignores Olmos and Baynham, but to the contrary, Life Spine's proposed construction encompasses Olmos and Baynham's usage of the word "complementary."

Finally, Globus argues Mr. Drewry's testimony is "entitled to no weight on appeal" because it was "improperly incorporated by reference into the Petition." RedBr. 43-44. Yet there is no dispute that his testimony was cited by the Petition, and his testimony undoubtedly supported the Petition's argument that "a POSITA would have understood[] the plain and ordinary meaning of this phrase to encompass endplate first and second ramped portions having angles that mirror each other." Appx225 (Petition)(45) (citing Appx942 (Drewry Decl.)(¶¶180-82)). Mr. Drewry's testimony at Paragraphs 180-82 is largely the same as what was stated in the Petition, and he merely provided further clarification about a POSITA's understanding of the plain meaning of "complementary." He did not provide any new argument that was improperly incorporated by reference. *Guardant Health, Inc. v. Vidal*, 2023 WL 3262962 at *5 n.4 (Fed. Cir. 2023) ("The Director argues Guardant improperly incorporated arguments from Dr. Quackenbush's declaration in violation of 37 C.F.R. § 42.6(a)(3) …. This argument is inapt because Guardant's response brief maps claim 1's elements to Guardant360 by relying on the evidence and expert declaration, not by incorporating legal arguments.").

## **CONCLUSION**

The Board's Final Written Decision should be reversed and the Court should enter an order finding that claims 10 through 14 of the '731 patent are unpatentable.

Dated: May 1, 2025

Respectfully submitted,

*/s/ James M. Glass*
James M. Glass
QUINN EMANUEL URQUHART
& SULLIVAN, LLP
51 Madison Ave., 22nd Floor
New York, NY 10010
(202) 849-7000
jimglass@quinnemanuel.com

*Counsel for Appellant*

**CERTIFICATE OF COMPLIANCE**

I hereby certify that this corrected brief complies with the type-volume limitation of Fed. Cir. R. 28.1(b)(2)(A). The brief contains 5,703 words according to the word count of the word-processing system used to prepare the brief, excluding the parts of the brief exempted by Fed. R. App. P. 32(f) and Fed. Cir. R. 32(b).

This brief complies with the typeface requirements of Fed. R. App. P.32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6). The brief has been prepared in a proportionally-spaced typeface, 14 point Times New Roman, using Microsoft Word 360.

Dated: May 1, 2025

*/s/ James M. Glass*
James M. Glass
QUINN EMANUEL URQUHART
& SULLIVAN, LLP
51 Madison Ave., 22nd Floor
New York, NY 10010
(202) 849-7000
jimglass@quinnemanuel.com

*Counsel for Appellant*

## CERTIFICATE OF SERVICE

I hereby certify that on May 1, 2025, I filed or caused to be filed the foregoing document with the Clerk of the United States Court of Appeals for the Federal Circuit via the CM/ECF system and served or caused to be served a copy on all counsel of record by the CM/ECF system.

Dated: May 1, 2025

*<u>/s/ James M. Glass</u>*
James M. Glass
QUINN EMANUEL URQUHART
& SULLIVAN, LLP
51 Madison Ave., 22nd Floor
New York, NY 10010
(202) 849-7000
jimglass@quinnemanuel.com

*Counsel for Appellant*